```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JAIME PORTILLO,                                             :
                                                            :
                            Plaintiff,                      :
                                                            :          17-CV-6675 (VSB)
            - against -                                     :
                                                            :           OPINION & ORDER
                                                            :
CITY OF NEW YORK, et al.                                    :
                                                            :
                            Defendants.                     :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/1/2020

Appearances:

Jaime Portillo
Coxsackie, NY
*Proceeding pro se*

Nicholas Benjamin Green
New York City Law Department
New York, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

Pro se Plaintiff Jaime Portillo brings this action against the City of New York (the "City"), and six medical employees at Rikers Island, Azmat Hassan, MD; Pierre Provilon, PA; Kathleen Lehey, NP; and Christine Edmondson, NP; Jerry Mims, MHC; and Anne Petraro, LMHC ("Individual Defendants," and collectively with the City, "Defendants"). Before me is Defendants' motion to dismiss Plaintiff's second amended complaint. (Doc. 40.) Because Plaintiff does not plausibly allege that Defendants committed any intentional or reckless acts with regard to treating his medical condition, and further fails to plausibly allege the City's *Monell* liability, Defendants' motion to dismiss is GRANTED.

### I.      Factual Background and Procedural History[1]

Plaintiff filed the Complaint in this action on August 31, 2017. (Doc. 2 ("Compl.").) By order dated October 5, 2017, Chief Judge Colleen McMahon granted Plaintiff's request to proceed *in forma pauperis*, (Doc. 4), and on October 11, 2017 she issued an Order to Amend, granting Plaintiff leave to file an amended complaint, (Doc. 5). In the Order to Amend, Chief Judge McMahon described Plaintiff's Complaint as alleging a deliberate indifference claim under the Fourteenth Amendment and 42 U.S.C. § 1983, naming as defendants the City of New York and various John Doe doctors who treated Plaintiff during his pretrial detention at Rikers Island. The Order to Amend described the factual allegations in Plaintiff's complaint as follows:

> In November 2015, Plaintiff Jaime Portillo was a pretrial detainee at [Anna M. Kross Center (AMKC)] on Rikers Island. (Compl. at 3.) He "became very depressed" and anxious, and on an unspecified date,[2] a doctor prescribed Risperdal, telling Plaintiff that "it was the best medication for [him]." (*Id.*) At some point, a "noticeable lump" appeared on Plaintiff's right eye, and his vision "has not been the same since." (*Id.*) After taking Risperdal for a few weeks, Plaintiff had soreness and swelling in his breasts. (*Id.*)
>
> Plaintiff annexes treatment notes to his complaint. Notes dated July 2016, list Risperdal among Plaintiff's "Current Medications," but make no specific mention that he complained of side effects. (*Id*. at 10.) Notes dated August 1, 2016, refer to "gynecomastia" and state that a lab was "ordered for 8/4/2016" to test prolactin. (*Id*. at 9.) Other treatment notes state "prolactin level mildly elevated" as of August 6, 2016, and order a change of medication: "dc risperdal. start abilify." (*Id*. at 8.)

---

[1] The facts set forth in this section are derived from Plaintiff's Complaint and the documents attached to the Complaint, (Doc. 2), as well as Plaintiff's Amended Complaint, (Doc. 8), and second amended complaint, (Doc. 28). I assume the allegations set forth in Plaintiff's Complaint, its attachments, the Amended Complaint, and second amended complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11-CV-8876 (CS), 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016) ("[A] court is permitted to consider factual allegations in *pro se* plaintiffs' preceding complaints in order to supplement those in amended complaints."). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] The Order to Amend notes that "Plaintiff ha[d] another pending action in which he asserts[ed] claims against medical personnel arising between July 5, 2016, and July 18, 2016, at AMKC. *Portillo v. The City of New York*, No. 17-CV-5448 (CM) (S.D.N.Y.). Treatment notes annexed to that complaint, and dated July 5, 2016, provide[d]: 'Start Zoloft . . . Start Risperdal.' No. 17-CV-5448 (ECF No. 2, Compl. at 13.)." (Doc. 5, at 2 n.2.)

2

>Plaintiff indicates in the complaint, which he signed in August 2017, that his left breast remains larger than his right breast and is "deformed." (*Id*. at 3.)

(Doc. 5, at 2.) Because these allegations were "insufficient to plead that any defendant acted with deliberate indifference to his serious medical needs," Chief Judge McMahon's order instructed Plaintiff to replead his allegations with more detail. (Doc. 5, at 4–5.) The Order to Amend also instructed Plaintiff to bolster his allegations regarding § 1983 if he wished to continue to name the City of New York as a defendant in the Amended Complaint. (*Id.* at 4 n.5.)

Plaintiff filed the Amended Complaint on February 13, 2018. (Doc. 8 ("Am. Compl.").) Plaintiff's Amended Complaint named four defendants, including Azmat Hassan, MD; Pierre Provilon, PA; Kathleen Lehey, NP; and Christine Edmondson, NP; and also mentioned Jerry Mims, MHC and Anne Petraro, LMHC. On April 10, 2018, Plaintiff filed a letter requesting leave to further amend his Amended Complaint to name as a defendant the City of New York, (Doc. 22), which I granted on April 24, 2018, (Doc. 24). Because my April 24, 2018 order was not mailed to the pro se Plaintiff, on June 22, 2018 I again ordered Plaintiff to amend his Amended Complaint naming the City of New York as a defendant and adding any further allegations against the City of New York. (Doc. 25.) The Plaintiff complied with my instructions and filed a second amended complaint on July 24, 2018. (Doc. 28.)[3]

Plaintiff's second amended complaint largely restates the factual allegations in the Amended Complaint with slightly more detail. "In November 2015, Plaintiff was experiencing a great deal of stress, rejection and dejection that resulted in depression and fatigue to the point of plaintiff wanting to harm [himself] based upon illusionary and reoccurring thoughts." (Op. Compl. ¶ 4.) As a result, Plaintiff contacted Mental Health services and was seen by Medical

---

[3] Although Document 28 is titled the "Amended Complaint," the document is Plaintiff's second amended complaint. Accordingly, I will refer to Document 28, the operative complaint in this case, as the second amended complaint, and cite to Document 28 with the abbreviation "Op. Compl."

3

Doctor Azmat Hassan." (*Id.*)  "[A]fter explaining [his] situation [Plaintiff] was placed on . . . medication called Risperdal 0.5 MG." (*Id.*)  The medication "caused a strange reaction to [P]laintiff's chest," including "aching pain and swollen chest tissues that turned redish," and liquid leaking from Plaintiff's left breast.  (*Id.*)  Plaintiff states that due to his medication, his left breast became bigger than the right, causing him a great deal of pain.  (*Id.*)

In the weeks following his appointment with Defendant Hassan, Plaintiff was seen by Defendant Provilon, a Nurse Practitioner, "who informed [P]laintiff" that he was "suffering side [e]ffects from the medication prescribed by [Defendant Hassan]." (*Id.*)  Plaintiff's condition progressed, and he was taken to the facility infirmary and was held.  (*Id.*)  Plaintiff was seen by Nurse Practitioner Kathleen Lehey, [who] informed [him] that his chest condition [could] be a direct result of the medication prescribed by [Defendant Hassan]." (*Id.*)  Defendant Lehey further stated that she would speak with Defendant Hassan "for determination as to whether a change of medication [was] necessary." (*Id.*)  After several weeks of appointments with Defendant Lehey, "Plaintiff was still suffering from great aching pain to his chest and was brought back to [the] facility [i]nfirmary and seen by [Defendant Edmondson]." (*Id.*)  Plaintiff informed Defendant Edmondson of his conditions, which "still [had] not changed," and when she examined him, Defendant Edmondson noted Plaintiff's enlarged "chest plate." (*Id.*)  Subsequently, Plaintiff was seen by Anne Petraro, after which x-rays were ordered.  (*Id.*)  After his x-ray, Plaintiff was told that his "pain could be a result of mental disabilities." (*Id.*)  After a mental health evaluation, Plaintiff was "outright prescribed Risperdal medication causing" his enlarged chest, for which he has yet to be treated.  (*Id.*)  Plaintiff's second amended complaint further states that the City of New York was at all times responsible for training the medical officials at Rikers.  (*Id.*)

On November 5, 2018, Defendants filed a motion to dismiss, supported by a memorandum of law. (Docs. 40–41.) On August 13, 2019, I granted Defendants' motion to dismiss because Plaintiff had not opposed Defendants' motion or otherwise appeared in the case. (Doc. 45.) On December 27, 2019, after Plaintiff filed a letter requesting that I reopen his case, I granted Plaintiff's request and instructed Plaintiff to respond to Defendants' motion to dismiss. (Doc. 51.) Plaintiff filed a memorandum of law in opposition to Defendants' motion to dismiss on January 24, 2020, (Doc. 52), to which Defendants replied on February 18, 2020, (Doc. 55).

## II.     Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations and citation

omitted).  A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest."  *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)).  Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory allegations.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

### III.  Discussion

In light of Plaintiff's pro se status, I liberally construe the Amended Complaint as alleging a claim under the Fourteenth Amendment and § 1983 for Defendants' deliberate indifference to Plaintiff's medical needs.

### A. *Applicable Law*

Although Plaintiff asks me to apply the Eight Amendment in the instant case, a pretrial detainee's claim for deliberate indifference is evaluated under the Due Process Clause of the Fourteenth Amendment, as "[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation omitted). To plead a Fourteenth Amendment claim for deliberate indifference to a serious medical need, a pretrial detainee like Plaintiff must allege that: (1) he had a "serious medical need," *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000), and (2) the defendant either "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety," *Darnell*, 849 F.3d at 35 (relying on *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)); *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019) ("Although *Darnell* did not specifically address medical treatment, the same principle applies here. *See* [849 F.3d] at 33 n.9 (noting that the same standard applies to claims for deliberate indifference to medical needs because 'deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment').").

Regarding the first prong, "[t]he serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.* at 86. A medical need qualifies as a sufficiently serious condition where the failure to treat it "could [have] result[ed] in further significant injury or the unnecessary and wanton infliction of pain." *Harrison*, 219 F.3d at 136 (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). "In determining whether a medical need is sufficiently serious" the court should consider factors

7

"such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86.

In alleging the second prong, a detainee "must show something more than mere negligence to establish deliberate indifference in the Fourteenth Amendment context," but need not allege "proof of a malicious or callous state of mind." *Id.* at 86–87 (internal quotation marks and citation omitted). "[M]ere medical malpractice is not tantamount to deliberate indifference, but it may rise to the level of deliberate indifference when it involves culpable recklessness, *i.e.*, an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Id.* at 87 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 107 (2d Cir. 2000)).

### B.   *Application*

#### 1. Serious Medical Need

As an initial matter, Defendants state that "[f]or purposes of this motion, [D]efendants are not addressing the seriousness of [P]laintiff's medical condition under the deliberate indifference analysis as [P]laintiff has failed to plead any acts on the part of any defendant that would satisfy the [second element]" regarding intentional or reckless acts. (Doc. 41, at 6.)  Because Defendants do not dispute Plaintiff's satisfaction of the serious medical need element, and only contest Plaintiff's satisfaction of the second element, Defendants have conceded the serious medical need element at the motion to dismiss stage. *See Naples v. Stefanelli*, No. 12-CV-4460 (JS)(ARL), 2015 WL 541489, at *5–6 (E.D.N.Y. Feb. 7, 2015) (stating that failure to raise an argument known to a defendant on a motion to dismiss constitutes waiver of the argument at the motion to dismiss stage).  In any case, given Plaintiff's allegations of being in chronic and great pain as a result of his gynecomastia symptoms, I find that Plaintiff has alleged sufficient facts to

plausibly demonstrate that he had a serious medical need. *See Leconte v. Lightner*, No. 3:14-cv-01492-VLB, 2015 WL 4104842, at *3 (D. Conn. July 8, 2015) (concluding that allegations involving the same side effects of taking Risperdal "allow[ed] the Court to reasonably infer that [plaintiff] suffered from a serious medical need").

### 2. Intentional or Reckless Acts

#### a. Individual Defendants

With regard to the second element regarding the Defendants' intentional or reckless acts, Plaintiff has failed to adequately plead that any of the Individual Defendants "acted intentionally to impose [his] alleged condition, or recklessly failed to act with reasonable care to mitigate the risk" posed by his condition. *Darnell*, 849 F.3d at 35. Instead, Plaintiff's medical records indicate that he was diagnosed with gynecomastia, and shortly thereafter his Risperdal prescription was discontinued. Plaintiff appears to have been diagnosed with gynecomastia by Physician Assistant Frantz Nicholas on August 1, 2016. (Compl. 9.) The medical progress notes from that date state that a lab was "ordered for 8/4/2016" to test Plaintiff's prolactin levels, and that Plaintiff would be referred to the mental health unit. (*Id.*) Plaintiff's next appointment appears to have been on August 24, 2016. The medical progress notes from that date, documented by Defendant Edmondson, list as the reason for the appointment "[m]edication follow-up." (Compl. 14.) However, the notes also state that the "[p]atient refused to be seen" and "fanned writer away and walked off." (*Id.*) The notes further state that "[m]eds will be bridged and [patient] will be rescheduled." (*Id.*) The "treatment" section of the notes states that Plaintiff was still being prescribed Risperdal, but the "follow up" note states "2 – 3 days (Reason: Medication follow up)." (*Id.*) Two days later on August 26, 2016, Psychiatric Nurse Practitioner Jennifer Ferraro documented that Plaintiff was experiencing "medication side

9

effect[s]" including "breast enlargement and tenderness," with a "Prolactin level" that was "mildly elevated." (Compl. 8.) The same note states "dc risperdal. start abilify." (*Id.*) The "Change in Medication" note further reads "[c]hange in medication regimen: Yes DC risperdal, complains of breast tenderness. Will start Abilify." (Compl. 8, 13.)[4] The August 26, 2016 records are the most recent medical records provided by Plaintiff. Indeed, Plaintiff admits that in response to his requests for treatment, the Defendants "lower[ed] [Plaintiff's] dosage," of Risperdal. (Doc. 52, at 13).

Plaintiff's only other allegation of having been prescribed Risperdal after these evaluations is his allegation that, after a mental health evaluation, Plaintiff was "outright prescribed Risperdal medication causing" his enlarged chest, for which he has "yet to be treated." (Op. Compl. ¶ 4.) However, Plaintiff does not specify when exactly he was re-prescribed Riseperdal after August 26, 2016 when his prescription was discontinued—if indeed that is what Plaintiff is alleging—or which of the Defendants—if any—is responsible for such a prescription. Accordingly, even construing the pleadings liberally in the pro se Plaintiff's favor, Plaintiff fails to state a plausible claim supported by more than conclusory allegations. *See Thomas v. City of New York*, No. 16-CV-2924 (KAM), 2016 WL 4203488, at *2 (E.D.N.Y. Aug. 9, 2016) ("Here, plaintiff's one-sentence allegation that he suffered side effects from taking Risperdal while incarcerated fails to state a claim for deliberate indifference to his serious medical needs under § 1983."); *Leconte*, 2015 WL 4104842, at *3 (dismissing § 1983 claims brought by prisoner who allegedly suffered side effects from taking Risperdal where plaintiff did not "say what Defendants did (or failed to do), when and for how long they did it (or failed to do it), or provide facts to allow the Court to reasonably infer what they knew (or must have

---

[4] I assume for purposes of this motion that "dc" and "DC" mean discontinue.

10

known) when they did it").

### b. The City of New York

Because Plaintiff has named the City as a defendant, Plaintiff must plead facts showing that the municipality itself caused a violation of his rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011). To adequately state a § 1983 claim against a municipality, Plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the Plaintiff's constitutional rights. *See Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978)). Here, Plaintiff does not allege, and nothing in the pleadings suggests, any policy officially adopted by the City with respect to Risperdal, or a causal connection between that policy and the deprivation of Plaintiff's constitutional rights.

Because Plaintiff's second amended complaint refers to the City's responsibility to train the Individual Defendants, I also consider *Monell* liability based on a failure to train theory. However, as the Supreme Court has said, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick*, 563 U.S. at 61. Still, a plaintiff may prevail on such a claim where a policymaking official "was aware of constitutional injury, or the risk of constitutional injury, but failed to take appropriate action to prevent or sanction violations of constitutional rights." *Jones*, 691 F.3d at 81; *see also Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (defining deliberate indifference as a "conscious disregard of the risk that poorly-trained employees will cause deprivations of clearly established constitutional rights"). Plaintiff's second amended complaint alleges in conclusory fashion that the "City of New York . . . was . . . responsible for the training of all Riker[s] Island [Department of Corrections] officials . . . including the Department of Health's Prison Health

Services . . . ." (Op. Compl. ¶ B.1.)  Plaintiff further alleges that Defendant Hassan was the "overseer of all Medical treatment [] AMKC employees." (*Id.* ¶ B.2.)  However, these allegations are too conclusory to plausible allege *Monell* liability based on a failure to train theory.  Even if Plaintiff adequately alleged the City's failure to train its employees, my analysis of the claims against the Individual Defendants demonstrates that Plaintiff has failed to adequately plead an underlying violation of his rights under the Fourteenth Amendment.

## IV.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's second amended complaint is GRANTED.

The Clerk of Court is directed to terminate the open motion at Document 40, enter judgment for Defendants, and close this case.  The Clerk is further directed to mail a copy of this Opinion & Order to the pro se Plaintiff.

SO ORDERED.

Dated: June 1, 2020
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge